1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   DORIS H. GRAY, a married woman,    )   Case No. CV 07-1466-PHX-MHM
                                       )
10              Plaintiff,             )   **ORDER**
                                       )
11  vs.                                )
                                       )
12  MOTOROLA, INC., a Delaware         )
    Corporation,                       )
13                                     )
                Defendant.             )
14                                     )
    _____)
15

16         Currently before the Court are Plaintiff Doris Gray's ("Plaintiff") Motion for Partial

17  Summary Judgment (Dkt. #75) and Defendant Motorola, Inc.'s ("Motorola") Motion for

18  Summary Judgment (Dkt. #79).  After reviewing the pleadings and determining that oral

19  argument is unnecessary, the Court issues the following order.

    **I.      BACKGROUND**
20
           On March 7, 1988, Plaintiff, a 36 year-old African-American female, began working
21
    for Motorola as a commercial attorney in the Contracts and Compliance Department of its
22
    Government & Enterprise Mobility Solutions ("GEMS") business unit or its predecessor
23
    business units.  (Defendant's Statement of Facts ("DSOF") ¶¶ 1-4; Plaintiff's Statement of
24
    Facts ("PSOF") ¶ 1).  Plaintiff continued to work for Motorola throughout the 1990s, and by
25
    2001 Plaintiff had become a Senior Contracts and Compliance Manager in the GEMS Law
26
    Department, supporting Motorola's Integrated Solutions Division for the Public Service
27
    and/or Safety business.  (PSOF ¶¶ 2-4, 13; DSOF ¶¶ 4, 7).
28

From 2003 to 2006, Plaintiff reported to Ms. Therese Vande Hey, Director of Environmental Health and Safety Legal Services in the GEMS Law Department. (PSOF ¶ 26). During this time period, Plaintiff worked for Motorola as a "Commercial Attorney" (although subsequent to that time, her title appeared as "Director of Contracts" in Motorola's human resources database) in the GEMS Law Department. (PSOF ¶¶ 40, 42-43; DSOF ¶¶ 8-9). Plaintiff's primary responsibilities included reviewing, drafting, negotiating, and monitoring certain of Motorola's contracts with state and local government customers, including reviewing customer bids and proposals, and monitoring compliance with federal and state laws and disclosure obligations. (PSOF ¶¶ 9, 13, 28-30; DSOF ¶¶ 10).

In April 2005, Lewis Steverson, an African-American male, became head of Motorola's GEMS Law Department. (DSOF ¶¶ 36, 127). Among his responsibilities, Mr. Steverson was tasked with merging the GEMS Contracts and Law Departments. (DSOF ¶¶ 35, 36). From 2005 to 2006, Ms. Vande Hey, Plaintiff's supervisor, reported to Mr. Steverson. (PSOF ¶ 48).

Around June 2005, Deborah Neil, one of Motorola's commercial attorneys, received a copy of Motorola's Basic Ordering Agreement Standard Terms and Conditions ("BOA") with the Illinois Criminal Justice Information Authority ("ICJIA"). (DSOF ¶ 11). The BOA differed from Motorola's standard contracts, containing terms and conditions that were less favorable to Motorola; it appeared to have been signed by Plaintiff on Motorola's behalf. (DSOF ¶¶ 11-12; PSOF ¶ 88). Ms. Neil contacted Plaintiff and forwarded the BOA to her on June 20, 2005. (PSOF ¶ 90). Plaintiff then reviewed the contract and discovered her signature had been forged; she reported this to Ms. Neil, who reported the suspected forgery to her supervisor, Mr. Earl Richardson, who then reported the forgery to Ms. Vande Hey, Plaintiff's supervisor. (PSOF ¶ 91; DSOF ¶ 13).

Plaintiff and Ms. Vande Hey communicated about the suspected forgery, and in a July 1, 2005 email, Ms. Vande Hey told Plaintiff that "based on our conversations and follow-up I had with you yesterday, there is absolute[ly] no one involved to date who could possibly construe any potential wrong doing on your part" (PSOF ¶ 96); Plaintiff responded by email

that "[s]ince you have established our position there is no point to our discussing this matter." (PSOF ¶ 97). Mr. Steverson was copied on the July 1st email(s). (PSOF ¶ 98).

On July 6, 2005, Ms. Vande Hey reported the suspected forgery to Motorola's Office of Ethics and Compliance ("OEC"), which commenced a formal investigation into the matter. (DSOF ¶¶ 15-16; PSOF ¶ 102). Around that same time, Plaintiff wrote a letter to Motorola's Office of Ethics and Compliance ("OEC"), in which stated, "I believe that our failure to rescind the contract would send the message that Motorola is more concerned with appearances than it is concerned with doing the right thing." (PSOF ¶ 101). Plaintiff also requested that the OEC issue her a letter at the completion of the investigation absolving her of any wrongdoing and stating that "there will be no adverse impact in terms of condition of employment or retaliation by an employee of Motorola . . . with regard to this matter," because Plaintiff had previously "been involved in investigations" and felt that she had "suffered retaliation for [her] participation by either the persons investigated or friends of the persons investigations. To this point, I would prefer management's assistance in finding a position with another organization." (PSOF ¶ 101).

In a July 19, 2005 email, on which Mr. Steverson was copied, Ms. Vande Hey wrote that the "investigation is currently pending with the OEC and any conclusions, including a finding of 'forgery,' have not been rendered." (PSOF ¶ 99, PSOF Exh. 20). In addition, during the investigation, Plaintiff wrote a letter to Ms. Vande Hey stating that she would like the BOA rescinded because, among other things, "[t]he contract is void since the signature was a forgery," and if the BOA is not rescinded,"it will remain in Motorola's system for years and may adversely impact the conditions of [her] employment." (PSOF 104; PSOF Exh. 22). Plaintiff also stated that she wanted "to express [her] appreciation for [Ms. Vande Hey's] offer to provide [Plaintiff] with a letter and place a letter in [her] personnel file to indicate that [she] was not the subject of the Ethics Committee's investigation. This action, along with rescinding the BOA, will result in closure of this matter for me." (Id.).

On September 5, 2005, a Motorola employee admitted to forging Plaintiff's signature on the BOA; the employee was discharged three days later. (DSOF ¶ 17). Plaintiff was

subsequently notified of the employee's termination and the completion of the OEC's investigation. (DSOF ¶ 18).

On November 11, 2005, Plaintiff sent an email to Ms. Vande Hey inquiring into whether the BOA had been rescinded and when she could expect a letter of absolution for her personnel file. (PSOF ¶ 107). Plaintiff sent a follow-up email to Ms. Vande Hey on December 27, 2005, on which Mr. Steverson was copied, to again inquire into whether the GEMS Law Department intended to rescind the BOA, reissue it with a valid signature, and provide Plaintiff with a letter acknowledging the forgery; she also stated that she was "concerned about this matter not being resolved for me." (PSOF ¶ 108, Exh. 25; DSOF ¶¶ 19-20). Ms. Vande Hey responded the next day, writing that she would provide the letter to Plaintiff for her personnel file, but that "[t]he other matter is pending given the sensitivity of the issue with the customer." (PSOF ¶ 109). Then, on January 16, 2006, Plaintiff responded, offering her "services in handling this forgery with the Illinois State Police," and with "rescinding the contract and signing an identical, new agreement with the appropriate signature. . . . Please let me know if I can be of any assistance in this matter!" (PSOF ¶ 110, Exh. 26).

On January 16, 2006, Plaintiff's husband, a former Motorola employee, sent a letter to Edward Zander, Motorola's Chairman and Chief Executive Officer, and copied Gregory Brown, President of GEMS, stating that he believed that Ms. Vande Hey "failed to do the right thing" in connection with the forgery investigation because "[f]or several months, she has delayed informing the customer of the forgery and that their contract is void." (PSOF ¶ 111; Exh. 27). Plaintiff's husband also wrote that he believed that "Motorola's Law Department . . . has not lived up to Motorola's high ethical standards set for its employees," and concluded by stating that he "would appreciate the evaluation of the concern raised in my letter." (Id.). Mr. Brown gave a copy of Plaintiff's husband's letter to Mr. Steverson. (PSOF ¶ 116). That letter was also shown to certain OEC employees, who subsequently advised Mr. Steverson "that [Plaintiff's husband] was previously a Motorola employee that had sued the company which I didn't know, and so they thought that [the letter] was

indication that either he or [Plaintiff] were preparing [to] file a lawsuit against [Motorola]." (PSOF ¶ 87).

In addition, Ms. Vande Hey wrote to Plaintiff on January 20, 2006, stating that "[Mr. Steverson] advised me that you escalated the issues and concerns you had over the [forgery] investigation"; her email then attempted to assure Plaintiff that "[her] concerns were taken very seriously" and that Plaintiff "was completely exonerated from any involvement with the matter." (PSOF ¶ 112, Exh. 25; DSOF ¶¶ 22-23). Ms. Vande Hey also wrote that

> with respect to the ISP contract, it's status remains unclear. I am aware of no prospective or existing business in Illinois where the contract is or became an issue. We are working . . . to clarify that status to understand [what] next steps [to take]. While I did commit to addressing the matter – rescinding the contract was not an actual commitment I made but rather an option to be seriously considered. I will follow-up with you on that status and advise you of the proposed response.

(DSOF ¶ 24; PSOF ¶ 112, Exh. 25). Plaintiff responded on January 23, 2009, that she "did not escalate [her] issues concerning the forgery" because she had "been too involved [in another matter] to escalate this matter." (PSOF Exh. 25). But on February 1, 2006, Plaintiff again responded to Plaintiff's January 20, 2006 email, this time writing that she "fe[lt] that [her] trust has been violated in the way the Law Department has handled this matter." (PSOF ¶ 117, Exh. 28).

Then, on February 9, 2006, Plaintiff sent letters to Mr. Brown, the President of GEMS, and Peter Lawson, Motorola's General Counsel, informing them that she was concerned with "the failure of the Law Department to inform the Illinois State Police of the forgery" because "[t]he Illinois State Police believe that their BOA is a valid contract"; "Motorola has failed in its responsibility to its customer to inform them that the signature on the BOA was forged." (PSOF ¶ 118, Exhs. 29, 30). Plaintiff also wrote that she "consider[ed] [her] reputation to be defamed as long as Motorola continues to represent to the Illinois State Police by its inaction that the signature on the BOA is valid," and that "[f]orgery is a crime. I should have reported this matter to the police. Instead I reported the forgery to my manager, Ms. Vande Hey, who appears to be content to let this matter run its course." (Id.).

The next day, after receiving Plaintiff's letter from Mr. Brown, Mr. Steverson wrote an email to Plaintiff, stating that although he sympathized with Plaintiff's concerns regarding her forged signature on the BOA, "Motorola respectfully disagrees with your and your husband's conclusions that the Company or its Law Department has done anything improper with respect to its investigation or resolution of this issue." (PSOF ¶ 119; DSOF ¶¶ 28-29). Mr. Steverson also stated, among other things, that Motorola has "attempted to contact the State of Illinois to alert them to the fact that the BOA contains a forged signature and to discuss with them the appropriate next steps"; he thanked Plaintiff for "taking the time to voice [her] concerns." (Id.). Plaintiff responded in a February 12, 2006 email that she "wholeheartedly concur[red]" with Mr. Steverson that the OEC "did an outstanding job in the investigation of the forgery," but disagreed with him "that the Law Department . . . took appropriate action in a timely manner to protect the customer's interest and [her] interest and to communicate with [her] in a straightforward manner." (PSOF ¶ 120; DSOF ¶ 30). Mr. Steverson replied via email the next day, thanking Plaintiff for her response and stating again that although "it is regrettable that [Plaintiff] fe[lt] that the Company should have resolved this matter more expeditiously," he "[stood] by [his] earlier statement that we communicated openly with [Plaintiff] and acted properly throughout the process." (PSOF ¶ 123, Exh. 32). That same day, Plaintiff was given a formal letter for her personnel file that made I clear that "at no time was [Plaintiff] ever suspected of any wrongdoing concerning the forgery and how it came to occur[.]" (PSOF ¶ 124, Exh. 33).

On February 15, 2006, Ms. Vande Hey informed the ICJIA of the forged signature on the BOA and indicated that Motorola wanted to re-execute the BOA on the same terms but with a proper signature. (DSOF ¶ 31). The ICJIA responded that although it believed it was unnecessary to re-execute the BOA in light of Motorola's affirmation that it would honor the terms of the contract, it would re-execute the BOA if requested by Motorola. (DSOF ¶ 32; PSOF Exh. 35). The BOA was re-executed with an authorized signature on Motorola's behalf on March 15, 2006. (DSOF ¶ 33; PSOF ¶ 125). In addition, a formal letter was sent to the ICJIA's General Counsel to follow-up on the conversation(s) between Ms. Vande Hey

and the ICJIA with respect to Plaintiff's forged signature on the BOA and the subsequent investigation and action taken by Motorola. (PSOF ¶ 125, Exh. 34). On March 16, 2006, Ms. Vande Hey told Plaintiff that Motorola had re-executed the BOA. (DSOF ¶ 34).

During this time period, Plaintiff was the only GEMS attorney managing contracts for Network and Enterprise Mobility who was based out of Motorola's facility in Chandler, Arizona. (DSOF ¶ 46; PSOF Exh. 40). Plaintiff's work involved supporting businesses in several locations, including Phoenix, AZ, San Diego, CA, and Schaumburg, IL. (PSOF ¶ 135).

Also during this time period, and in conjunction with merging the GEMS Contracts and Law Departments, Mr. Steverson determined that it was necessary to conduct a reduction-in-force ("RIF") to eliminate several of the 69 positions within the GEMS Law Department. (DSOF ¶ 39). The criteria used for deciding which employees would be terminated, included job performance, one-person offices, skill set for the new, combined GEMS Law Department, and redundant layers of management. (PSOF ¶ 148; DSOF ¶ 40).

On March 17, 2006, Mr. Steverson notified Plaintiff in person that her job had been eliminated as "part of overall reductions in the Law Department . . . and that her role was impacted because she was in a one-person office and we were closing all one-person offices in the GEMS Law Department. . . . Because of [Plaintiff's] years of service (18), she ha[d] 30 days to stay in the office to pursue other internal Motorola opportunities." (PSOF ¶¶ 126-27, Exh. 35; DSOF ¶¶ 45, 51). Pursuant to Motorola's Senior Service policy, terminations of an employee with more than ten years of service, such as Plaintiff, must be reviewed and approved by Motorola's head of Employee Relations; Mr. Steverson requested such a review. (DSOF ¶¶ 49, 103-04; PSOF ¶ 133). Mr. Steverson's request noted that there were no openings in either the GEMS Law Department or overall Law Department for which Plaintiff met the qualifications; a determination to be confirmed by Motorola's Human Resources Department. (PSOF ¶¶ 136, 140). Plaintiff's employment with Motorola was terminated on April 17, 2006. (DSOF ¶ 54). Her position in Chandler, Arizona was eliminated, and

Plaintiff's work was absorbed by other employees. (DSOF ¶ 57, Exh. 1, Gray Depo. p. 149:5-11).

In addition to Plaintiff's termination, two other Motorola employees, Monyeen Drury and Claudine Gilbert, who apparently worked remotely from home, were also terminated for the same stated reason, i.e., that they worked in one-person offices. (PSOF ¶ 126, Exh. 51). However, two different Motorola employees, Victoria Stewart and Robert Gonzales, who also worked in one-person offices, were retained, but either required to move to another office or work at least part time in an office in which other GEMS attorneys were located. (DSOF ¶ 95, Exh. 2). Ms. Stewart was approximately 50 years old around this time. (DSOF ¶ 96).

Following notification of her termination, between March 31, 2006 and July 7, 2006, Plaintiff submitted online applications for eight open positions within Motorola's GEMS Law Department and Integrated Supply Chain ("ISC") Law Department;[1] two of those positions were not filled. (DSOF ¶¶ 58, 77; PSOF ¶ 158). Motorola uses internal recruiters to review the qualifications of applicants and determine which resumes to send to the hiring manager for review, who then determines which applicants from the reduced pool to interview for the position. (DSOF ¶ 78). For five of the eight positions for which Plaintiff applied, her resume was screened by Motorola's recruiters and not forwarded to the respective hiring managers. (DSOF ¶ 79). Neither the recruiters nor managers were aware of Plaintiff's age or race; they were similarly unaware of the investigation into the forgery of Plaintiff's signature. (DSOF ¶¶ 80-81). Plaintiff was interviewed for only one position, a commercial attorney position in the Software and Licensing group within the ISC; the interview postdated a July 13, 2006 letter sent by Plaintiff's attorney to Mr. Lawson, Motorola's General Counsel, that outlined Plaintiff's claims against Motorola with respect to her termination. (PSOF ¶ 160; DSOF ¶ 70). The interview, which occurred on August

---

[1]The ISC supports Motorola's internal business units by operating their internal and contract manufacturing and logistics, and procuring materials for product manufacturing. (DSOF ¶ 59).

18, 2006, also postdated an August 7, 2006 Charge of Discrimination that Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"). (PSOF ¶ 188, Exh. 49). Plaintiff was not hired by Motorola for any of the positions for which she applied after her termination. (DSOF ¶¶ 66, 73, 77, 79, 110, 112, 115, 117, 122-23). The six individuals ultimately hired by Motorola were Caucasian; at least two of them were over the age of 40. (PSOF Exh. 47, pp. 22-23).

On September 19, 2006, Mr. Steverson placed a telephone call to Plaintiff and left a message informing her about an open Senior Counsel position in Motorola's Federal Contracts group. (Defendant's Statement of Facts in Response to Plaintiff's Motion for Partial Summary Judgment ("DSOF2") ¶¶ 1, 5). Mr. Steverson followed up with another telephone call and a letter inviting Plaintiff to apply for the position. (DSOF2 ¶¶ 7, 9). Plaintiff later emailed Mr. Steverson with questions about the position, to which Mr. Steverson responded, but on November 30, 2006, Plaintiff notified Mr. Steverson that she did not intend to apply for the position; she accepted an offer of employment with Avnet. (DSOF2 ¶¶ 10-12).

On March 19, 2007, Plaintiff filed a complaint against Motorola in Maricopa County Superior Court, asserting claims arising out of her termination under the Arizona Employment Protection Act ("AEPA") § 23-1501 and the public policy of the State of Arizona. (Compl., Dkt. #1, Exh. A). The case was removed to the District of Arizona on July 31, 2007 (Dkt. #1), and on April 15, 2008, Plaintiff filed a First Amended Complaint ("FAC"), asserting additional claims arising out of her termination, and failure to re-hire, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. (FAC ¶¶ 45-63).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing United States v. Shumway, 199 F.3d 1093, 1103-04 (9th Cir. 1999).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). Specifically, the moving party must present the basis for its motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. See, e.g., Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1105 (9th Cir. 2000) ("A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence.") (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 609 (11th Cir. 1991) ("Even after Celotex it is never enough simply to state that the non-moving party cannot meet its burden at trial.")).

A material fact is one that might affect the outcome of the case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, a "genuine" issue means that a reasonable jury could find in favor of the non-moving party. Id.; Anheuser - Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995) (same).

If the moving party meets its burden with a properly supported motion for summary judgment, then the burden shifts to the non-moving party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The nonmovant may not rest on bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trial. Fed.R.Civ.P. 56(e); see Anderson, 477 U.S. at 248-50 (discussing Fed.R.Civ.P. 56(e) standard); see also Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."). Conclusory

allegations, unsupported by factual material, are insufficient to defeat summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

On summary judgment, the Court may not make credibility determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). In addition, the Court must draw all reasonable inferences in favor of the nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002); Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995) (same). However, the mere existence of a scintilla of evidence supporting the nonmovant's petition is insufficient; there must be enough evidence from which a trier of fact could reasonably find for the non-movant. Anderson, 477 U.S. at 251-52 ("[T]he inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586. The nonmovant has the burden of identifying with reasonable particularity the evidence that it believes precludes summary judgment. Anderson, 477 U.S. at 249; see Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if evidence in the record is later found to create a genuine issue of material fact, a district court may grant summary judgment if the opposing party's papers do not include or conveniently refer to that evidence); Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (a district court is not required to scour the record in search of a genuine issue of triable fact).

**III.    MOTION FOR PARTIAL SUMMARY JUDGMENT**

On November 25, 2008, Plaintiff filed a motion for partial summary judgment on Motorola's mitigation of damages defense as it relates to Plaintiff's job search following her termination from Motorola. (Dkt. #75). Specifically, Plaintiff contends that Motorola provides no evidence relating to the availability of comparable employment. (Id., p. 5). Motorola responds that despite Plaintiff's contention it has "produced evidence of the availability of a substantially equivalent position, as well as evidence of Plaintiff's failure to

exercise reasonable diligence in pursing such employment." (Dkt. #86, p.1). Plaintiff did not file a reply.

Title VII "requires the claimant to use reasonable diligence in finding other suitable employment." Ford Motor Co. v. EEOC, 458 U.S. 219 (1982). However, the defendant bears the burden of proving that the plaintiff failed to mitigate her damages. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995). To satisfy this burden, the defendant must prove "that, based on undisputed facts in the record, during the time in question there were substantially equivalent jobs available, which [the plaintiff] could have obtained, and that [the plaintiff] failed to use reasonable diligence in seeking one." EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994) (emphasis in original).

Motorola has produced uncontested evidence that Mr. Steverson contacted Plaintiff in September 2006 to encourage her to apply for an open Senior Counsel position in Motorola's Federal Contracts group. (DSOF2 ¶ 1). The responsibilities of that position included the negotiation and drafting of federal government contracts; at an E12 pay grade, with a salary range of $93,500 to $150,500. (DSOF2 ¶¶ 2-3). Plaintiff was formerly employed by Motorola as a Senior Contracts and Compliance Manager with responsibilities that included negotiating and drafting contracts with Motorola's state and local government customers; at an E13 pay grade. (DSOF2 ¶ 4; DSOF ¶ 10; PSOF ¶¶ 9, 12-13, Exh. 39). Although not identical in responsibilities or pay grade, the availability of the Senior Counsel position at the very least raises a material issue of fact as to the availability of substantially equivalent employment subsequent to Plaintiff's termination.

In addition, the Court notes that Plaintiff does not allege that Motorola fails to raise a material issue of fact with respect to whether Plaintiff used reasonable diligence in pursing comparable employment. The record is unclear as to what extent Plaintiff continued her job search after July 7, 2006, the last date on which Plaintiff submitted an application for a position within Motorola's GEMS or ISC Law Departments. Further, Motorola proffers evidence that despite Mr. Steverson's attempts to reach Plaintiff to discuss the Senior Counsel position in September 2006, Plaintiff did not respond until November 2006.

(DSOF2 ¶¶ 5-10, Exh. A). However, also in November 2006, Plaintiff accepted a position with Avnet. (DSOF2 ¶¶ 12-13). Nonetheless, while that shows that Plaintiff was clearly engaged in some respect in seeking employment, Plaintiff's failure to respond to Mr. Steverson's calls for two months, and the lack of record evidence with respect to Plaintiff's job search between July and November 2006, is sufficient to raise a material issue of fact as to whether Plaintiff failed to use reasonable diligence in pursing substantially equivalent employment. Accordingly, the Court cannot conclude that Motorola fails to meet its burden on summary judgment with respect to its mitigation of damages defense.

## IV. MOTION FOR SUMMARY JUDGMENT

On November 26, 2008, Motorola filed a motion for summary judgment on all of Plaintiff's claims: discrimination in violation of the ADEA and Title VII, and retaliation in violation of the ADEA, AEPA, and public policy . (Dkt. #79). Plaintiff responds that there is sufficient evidence to allow a jury to reasonably conclude that her termination constituted "a violation of the AEPA and the public policy of the State of Arizona." (Dkt. #94, p.13). Plaintiff also responds that "[al]though there is no direct evidence of discrimination, the cumulative effect of the circumstantial evidence is strong enough that a factfinder could conclude that the decision to terminate Plaintiff was age motivated[.]" (Id., p.17).

### A. Age & Race Discrimination

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual [who is at least 40 years of age] . . . because of such individual's age." Id. at §§ 623(a), 631(a).

A district court evaluates ADEA and Title VII claims "that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."

<u>Diaz</u>, 521 F.3d at 1207 (citing <u>Enlow v. Salem-Keizer Yellow Cab Co.</u>, 389 F.3d 802, 812 (9th Cir. 2004)).[2]

> [1] [T]he employee must first establish a prima facie case of age discrimination. [2] If the employee has justified a presumption of discrimination, [then] the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. [3] If the employer satisfies its burden, [then] the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.

<u>Id.</u> (citing <u>Coleman</u>, 232 F.3d at 1281). "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." <u>Chuang v. Univ. of Cal. Davis, Bd. of Trs.</u>, 225 F.3d 1115, 1124 (9th Cir. 2000).

To establish a prima facie case of discrimination under the ADEA using circumstantial evidence, the plaintiff must demonstrate that she was (1) a member of the protected class (i.e., at least 40 years old), (2) performing her job satisfactorily [or was qualified for a particular position], (3) discharged [or subject to some other adverse employment action], and (4) either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination." <u>Diaz</u>, 521 F.3d at 1207 (citing <u>Coleman v. Quaker Oats</u>

---

[2] The United States Supreme Court as recently rejected the application of the burden-shifting framework to ADEA claims. <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. ___, 2009 WL 1685684 (2009) ("This Court has never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now."). The Court imposed what appears to be a much stricter standard for federal age discrimination claims: "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision." <u>Id.</u> at *7. That holding, which rejects the dissent's acknowledgment that "ADEA standards [were previously] generally understood [by courts] to conform to Title VII," <u>id.</u> at *10 (Stevens, J., dissenting), appears to at the very least narrow <u>Diaz</u> and its ancestry in the Ninth Circuit. Nonetheless, here, as the parties briefed this case before <u>Gross</u> was decided, and Plaintiff fails to meet her burden to raise an inference of age discrimination even under the more lax burden-shifting framework employed in <u>Diaz</u>, the Court's order need not specifically address the applicability of <u>Gross</u>, suffice it to say that Plaintiff fails to establish a reasonable inference that age was the "but-for" cause of Motorola's decision not to rehire Plaintiff.

- 14 -

Co., 232 F.3d 1271, 1281 (9th Cir. 2000)).[3]  Similarly, to establish a prima facie case of discrimination under Title VII,[4] "the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for a particular position [or performing his position satisfactorily]; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably."  Chuang, 225 F.3d at 1123; see Coleman, 232 F.3d at 1295 ("The analysis under Title VII is the same as that under ADEA.").  "An inference of discrimination can be established by 'showing the employer had a continuing need for [the employees'] skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably.'"  Diaz, 521 F.3d at 1207-08 (quoting Coleman, 232 F.3d at 1281).

### i. Title VII

Plaintiff is an African-American female, and she was discharged.  Motorola does not contest that Plaintiff satisfies the first two elements of a prima facie case of race discrimination under Title VII.  (Dkt. #79, p.12).  In addition, for purposes of summary judgment, Motorola does not contest that Plaintiff performed her job satisfactorily.  (Id.).  However, Motorola contends that Plaintiff's discharge and the decision not to re-hire her did not occur under circumstances that support an inference of discrimination on account of race.

---

[3]Gross does not necessarily require the court to reject in toto these four factors. Although federal age discrimination plaintiffs may no longer discharge their burden of persuasion simply by establishing a prima facie case of disparate treatment, the factors may continue to guide courts in determining whether the plaintiff has offered sufficient evidence on summary judgment to warrant a reasonable inference that age discrimination was the but-for cause of the challenged employer decision.

[4]The elements required to establish a prima facie case of disparate treatment under Title VII overlap with those required to establish discrimination under 42 U.S.C. § 1981. See, e.g., Rodriguez v. General Motors Corp., 904 F.2d 531, 532-33 (9th Cir. 1990) (applying the McDonnell Douglas framework to a § 1981 claim of racial discrimination); Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 538-39 (9th Cir. 1982) ("[A] plaintiff may establish a prima facie case of intentional discrimination in employment under section 1981 upon proof of facts which would establish a prima facie case of disparate treatment under Title VII, pursuant to the four McDonnell Douglas elements or otherwise.").

Plaintiff did not respond to Motorola's motion for summary judgment on Plaintiff's Title VII claim, with respect to either Plaintiff's termination or Motorola's decision not to re-hire her. Summary judgment is thus appropriate if Motorola's pleadings show that there is no genuine issue as to any material fact and Motorola is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(e)(2) ("If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); Grimmway Enterprises, Inc. v. PIC Fresh Global, Inc., 548 F. Supp.2d 840 (E.D. Cal. 2008) (same).

Motorola has met its burden. First, an inference of discrimination is undermined when the relevant decision-maker is a member of the same protected class as the plaintiff. Ziegler v. Delaware County Daily Times, 128 F. Supp.2d 790, 812 n. 47 (E.D. Pa. 2001). Here, the relevant decision-maker with respect to Plaintiff's termination, Mr. Steverson, is also African-American. In addition, one of the two individuals Plaintiff contends was treated more favorably, i.e., they were transferred to another office rather than terminated, is also African-American. (DSOF ¶ 126). Furthermore, although the six individuals hired by Motorola for the positions to which Plaintiff applied were Caucasian, which the Court only discovered after scouring the record (PSOF Exh. 47, pp. 22-23), there is no evidence that the relevant decision-makers for the respective positions, except for the one manager who actually interviewed Plaintiff for a position, knew of Plaintiff's race at the time they determined not to interview her. (DSOF ¶¶ 67, 79, 80). And with respect to the one position for which Plaintiff was interviewed, the hiring manager for that position, Mr. Kenzer, stated that he did not consider Plaintiff's race in determining whether or not to hire her for the position. (DSOF ¶ 76). Plaintiff provides no evidence to contradict Mr. Kenzer's statement or call his credibility into question. Moreover, Plaintiff fails to demonstrate that she was better qualified than the applicants ultimately hired by Motorola for the positions to which she applied. See Mitchell v. Office of Los Angeles County Superintendent of Schools, 805 F.2d 844, 846 (9th Cir. 1986) (affirming dismissal of discrimination claim where hired applicant was better qualified than plaintiff); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("The plaintiff must prove by a preponderance of the evidence that

she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."). Accordingly, Motorola has met its burden; there are no genuine issues of material fact to support Plaintiff's claims that her termination and Motorola's decision not to re-hire her occurred under circumstances giving rise to an inference of discrimination on account of race. Plaintiff's Title VII claim fails as a matter of law.

   ii. ADEA

   Plaintiff is over 40 years of age and was discharged after she had obtained protected status (i.e., Plaintiff was over forty years old when she was fired). Motorola does not dispute that these two elements of Plaintiff's prima facie case have been satisfied. (Dkt. #79, p.12). In addition, Motorola does not dispute, for purposes of summary judgment, that Plaintiff performed her job satisfactorily. (Id). The remaining question then, is whether Plaintiff was replaced by a substantially younger employee with equal or inferior qualifications and/or discharged under circumstances giving rise to an inference of age discrimination.

   Motorola contends that Plaintiff was fired as part of a general reduction in its workforce (and specifically, a general reduction of employees in the GEMS Law Department). Plaintiff agrees that this is "an ADEA reduction in force case," and acknowledges that "[i]n the present case, there is no direct evidence of discrimination[.]" (Dkt. #94, pp. 15, 17). Nevertheless, "where a discharge occurs in the context of a general reduction in the employer's workforce[,] . . . . *circumstantial* evidence other than evidence concerning the identity of a replacement employee may also warrant an inference of discrimination." Diaz, 521 F.3d at 1207 n. 2 (emphasis added). "This inference can be established by showing the employer had a continuing need for [their] skills and services in that [their] various duties were still being performed or by showing that others not in [their] protected class were treated more favorably." Coleman, 232 F.3d at 1281 (internal quotation marks and citation omitted). To that end, Plaintiff argues that "the cumulative effect of the circumstantial evidence is strong enough that a factfinder could conclude that the decision to terminate [and to not re-hire] Plaintiff was age motivated[.]" (Dkt. #94, p.17).

Plaintiff fails to provide sufficient circumstantial evidence to warrant an inference that Motorola's decisions to terminate and to not re-hire her were motivated based on her age. With respect to her termination, Plaintiff contends that "[n]ot all attorneys in single person offices were terminated"; "attorneys younger that [sic] Plaintiff were given the opportunity to work out of other offices," whereas Plaintiff was not provided with a similar opportunity. (Dkt. #94, p.17). Plaintiff, however, does not contend that Motorola did not eliminate all "one-person offices" during its RIF. Plaintiff also does not identify which "younger" attorneys were not terminated but allowed to work out of other offices. Indeed, Plaintiff's citation to her Statement of Facts mentions only that Plaintiff "alleges that she was treated disparately from other colleagues (Chris Backs, Eloise Robinson and Eleanor Rananchandran)." (PSOF ¶ 180). However, there is nothing in the record to indicate that those three individuals worked in one-person offices. In addition, after scouring the exhibits, which this Court is not required to do, the Court discovered that each of those individuals were over 40 years old at the time of the RIF. (PSOF Exh. 39). The Court also discovered that Ms. Backs appears to have been selected for termination in the RIF. (Id.). Plaintiff's assertion is not supported by her Statement of Facts or the record.

The record reveals that there were two employees working out of one-person offices who were retained and allowed to work out of other offices, Ms. Stewart and Mr. Gonzales. (DSOF ¶ 95). Ms. Stewart was required to move from Hanover, Maryland to Motorola's Washington, D.C. office, and Mr. Gonzales, who appears to have previously worked remotely in Anaheim, California, was required to spend at least three days per week in Motorola's San Diego, California office. (Id.). But although Mr. Gonzales was a "younger" employee, in that he was younger than 40 years old at the time of the RIF, Ms. Stewart was not; she was 50 years old at the time of the RIF. (DSOF ¶ 96; PSOF Exh. 39). As such, the Court finds it hard to see how Motorola's failure to offer Plaintiff the same opportunity, i.e., to move, at least part-time, to an office that contained more GEMS attorneys, constitutes age discrimination when it was offered to both a younger employee and an employee in Plaintiff's protected class.

The only other circumstantial evidence produced by Plaintiff that relates to Plaintiff's prima facie case of age discrimination, is Plaintiff's contention that "Mr. Steverson knew Plaintiff's age and that Plaintiff was one year away from eligibility for retirement benefits because he had to prepare the Form 1441 for senior service employees." (Dkt. #94, p.19). Plaintiff, however, fails to support that assertion with any citation to the record. In any event, Plaintiff's argument fails because Form 1441 simply applies to all employees with service of 10 or more years (PSOF ¶ 133); not all employees with service of 10 or more years are necessarily over 40 years old and thus in a protected class.

With respect to Motorola's decision not to re-hire Plaintiff, Plaintiff contends that Mr. Steverson falsely indicated that there were no openings for which Plaintiff was qualified, but then identified an open position with the ISC Law Department, and Mr. Steverson "did not follow the policy as there was also not much of a review into open positions[.]" (Dkt. #94, p.18). However, Plaintiff cites the Court to no policy that would require Mr. Steverson to locate open positions for Plaintiff after informing her that she was discharged. Regardless, Mr. Steverson did inform Plaintiff that he had identified an open position in the ISC Law Department. And that statement, contrary to Plaintiff's contention, is not inconsistent with Mr. Steverson's prior statement that there were no current openings in the *GEMS* Law Department that Plaintiff was qualified to perform. (PSOF ¶¶ 136-38). The additional fact that a commercial attorney position in the GEMS Law Department was posted 14 days after Plaintiff was informed of her discharge (Dkt. #94, p.18; PSOF ¶ 159) does not call that statement into question or support an inference of discrimination.

Plaintiff also argues that Motorola discriminated against her because despite the fact that she applied to and was qualified for a commercial attorney position in the GEMS Law Department in Sunnyvale, California (position/posting #46617), "[t]he person hired did not even work in [the GEMS Law Department] [and] [t]he person hired was six years younger and did not have state and local government experience." (Dkt. #94, p.18). Plaintiff also asserts that this position "required a person with relationships with and knowledge of public safety customers[,] [t]he exact customers that Plaintiff worked with and the same issues that

Plaintiff worked with." (Id.). However, Ms. Georgia Vlamis, the hiring manager for the position, stated that she "sought a candidate with strong skills in complex negotiations, antitrust and management to support direct and indirect sales and service organizations dedicated to Motorola's public safety customers." (DSOF ¶ 116). Ms. Vlamis ultimately selected Richard Blackwell for the position. (DSOF ¶ 117). Plaintiff cites to nothing in the record with respect to whether the position required an individual with state and local government experience; or that the Mr. Blackwell lacked such experience equivalent to or on par with Plaintiff's experience. Nor is there any indication as to what customers the selected applicant would work with in the new position. Indeed, Mr. Blackwell had been a senior counsel attorney at Motorola from 1997 to 2006, he possessed an MBA and had "expertise in the wireless industry, as well as . . . commercial sales agreements, management, and antitrust and regulatory issues." (DSOF ¶¶ 117, 120; Gray Depo. 176:18-177:13). More importantly, Mr. Blackwell was 49 years of age, and thus in Plaintiff's protected class. (DSOF ¶ 117). Thus, Motorola's decision to hire Mr. Blackwell instead of Plaintiff does not evidence age discrimination.

Finally, Plaintiff notes that she was only interviewed for one out of the eight internal positions for which she applied between March 31, 2006 and July 7, 2006. (Dkt. #94, p.18). In addition, Plaintiff contends that "[s]he was offered the interview only after her attorney sent a letter delineating her discrimination claims"; "Motorola's in-house counsel ordered that Plaintiff be provided a "sham" interview after Plaintiff made claims of age discrimination for a position." (Dkt. #94, pp. 18-19). But those contentions at most raise an inference that Motorola provided Plaintiff with an interview simply because she threatened litigation; they do not provide any basis for inferring that Motorola somehow engaged in age discrimination by failing to interview her for other positions. Further, there is no evidence that Mr. Kenzer, the hiring manager for the position that Plaintiff was offered an interview, knew that Plaintiff had threatened litigation. More importantly, as mentioned above, the individual ultimately hired for the position was over the age of 40 and thus in Plaintiff's protected class. Moreover, at least half of the individuals hired for the positions for which

Plaintiff applied were over 40 years of age and in Plaintiff's protected class. Plaintiff provides no evidence to show that Motorola had a continuing need for her skills and services, that Plaintiff was similarly situated in all material respect to the individuals ultimately hired for the positions to which she applied, or that others not in her protected class were treated more favorably. But see Beck v. United Food and Commercial Workers Union, Local 99, 506 F.3d 874, 885 (9th Cir. 2007) ("[I]n general, we have upheld inferences of discriminatory motive based on comparative data involving a small number of employees when the plaintiff establishes that he or she is similarly situated to those employees in all material respects.") (internal quotation marks and citation omitted). Plaintiff's evidence does not warrant an inference of discrimination.

Plaintiff's remaining evidence "challenges the credibility of the reasons stated for Plaintiff's termination, i.e., worked in a one person office." (Dkt. #94, p.19). That evidence, however, is applicable to the third stage of the McDonnell Douglas framework, i.e., whether the reason advanced by the employer constitutes mere pretext for unlawful discrimination. Plaintiff offers no circumstantial evidence, other than that addressed above, to support a reasonable inference of age discrimination in connection with her termination. Compare Diaz, 521 F.3d at 1207 (finding evidence of age discrimination based on statistical evidence of personnel decisions, employer's knowledge of employees' ages, and employer's decision not fire younger, less-qualified employees who assumed plaintiff's responsibilities) with Coleman, 232 F.3d 1283 (finding no evidence of age discrimination where "statistics failed to account for obvious variables – including education, previous position at the company, and distribution of age groups by position – that would have affected the results of the analysis"). Therefore, Plaintiff cannot establish a prima facie case of age discrimination and Motorola is entitled to summary judgment.

Even assuming Plaintiff was able to establish a prima facie case of age discrimination, Motorola has successfully satisfied its burden of setting forth a legitimate nondiscriminatory reason for terminating Plaintiff's employment: Plaintiff was discharged as part of Motorola's RIF in the GEMS Law Department because "she worked in a one-person office." (DSOF ¶¶

40, 45). See Coleman, 232 F.3d at 1282 ("A reduction-in-force is itself a legitimate nondiscriminatory reason for laying off an employee."); see also Diaz, 521 F.3d at 1211 ("To suffice under McDonnell Douglas, an employer's explanation must explain why the plaintiff 'in particular' was laid off.") (quoting Davis v. Team Electric Co., 520 F.3d 1080, 1094 (9th Cir. 2008)). Thus, the burden switches to Plaintiff to establish that the reason set forth by Motorola was simply pretext. Diaz, 521 F.3d at 1207.

A plaintiff can demonstrate that the facially legitimate reasons proffered by his or her employer is merely pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093-94 (internal quotation marks and citation omitted). Here, Plaintiff argues that Motorola's proffered reason for her discharge – that she worked in a one-person office – lacks credibility because "the label of a one person office [is] a misnomer"; "Plaintiff was not in a single person office as there was a significant legal presence in Arizona with 13 individuals from the law department (at least two attorneys) located in the facility where Plaintiff was co-located with one of her major clients." (Dkt. #94, p.17). In addition, Plaintiff states that "Mr. Steverson incorrectly limited the scope of Plaintiff's client base . . . to San Diego to justify his decision[,] . . . [when] in reality, one of Plaintiff's largest clients was located in Phoenix[.]" (Id.). Finally, Plaintiff appears to argue that Mr. Steverson failed to adhere to a policy giving preference for transfer and rehire to employees identified for termination. (Dkt. #94, p.16).

Plaintiff's arguments do not support her allegation that Motorola's proffered reason for terminating her employment was a pretext for age-based discrimination. The fact that Plaintiff worked with other Motorola employees in Motorola's facility in Chandler, Arizona, and that some or even a majority of Plaintiff's clients were located in Phoenix does not contradict Motorola's proffered reason for her discharge – she worked in a one-person office, i.e. she did not work in an office with other GEMS attorneys. Plaintiff does not contest the fact that Plaintiff was the only GEMS attorney in Motorola's facility in Chandler. (DSOF

¶ 46). Nor does Plaintiff offer any evidence or call into question whether Mr. Steverson in fact closed all "one-person offices," i.e., offices that contained only one GEMS attorney, in order to, as Motorola claims, consolidate geographically the GEMS attorneys. (DSOF ¶¶ 40-42).

In addition, the fact that Mr. Steverson did not provide a complete list of the locations of the businesses that Plaintiff supported in his recommendation to include Plaintiff in the RIF does not undermine the proffered reason for Plaintiff's discharge; regardless of where the businesses that Plaintiff supported were located, she was still the only GEMS attorney in Motorola's Chandler facility. Although Plaintiff appears to argue that Motorola's proffered reason for eliminating one-person offices – to geographically consolidate GEMS attorneys – makes little sense in light of the fact that one of Plaintiff's largest clients was located in Phoenix, Arizona, it is not the Court's role to question Mr. Steverson and Motorola's business judgment. See, e.g., Kinnally v. Rogers Corp., 2009 WL 597211, at *8 (D. Ariz. 2009) ("[T]he Court's role is not to question whether Defendant picked the most appropriate people for the RIF, but whether Defendant did so with a discriminatory motive.").

Plaintiff also apparently argues that Motorola violated its policy to give preference for transfer and rehire to employees identified for termination. See Brennan v. GTE Govt. Sys. Corp., 150 F.3d 21, 29 (1st Cir. 1998) ("Deviation from established policy or practice may be evidence of pretext."). However, Plaintiff produces no evidence of any such policy. At most, Plaintiff can only point to the fact that two out of at least five GEMS attorneys who worked in one-person offices prior to the RIF were allowed to transfer to other Motorola offices. (PSOF ¶¶ 95, 126). That does not establish Motorola had an established policy to give preference for transfer or rehire to employees identified for termination. In addition, at least one of the GEMS attorneys who worked in a one-person office and was eliminated in the RIF and not given an opportunity to transfer or re-hire, Claudine Gilbert, was younger than 40 years old at the time of the RIF; another, Monyeen Drury, was older than 40 and thus in Plaintiff's protected class; and while one of the employees given the opportunity to

transfer, Mr. Gonzales, was younger than 40, the other, Ms. Stewart, was older than 40. (PSOF Exh. 39). Accordingly, in addition to not establishing a prima facie case of age discrimination , Plaintiff has failed to create a genuine issue of material fact concerning whether the proffered reason for her discharge was pretext for age discrimination. See Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001) (evidence that one other similarly situated employee was treated in a similar manner negated plaintiff's showing of pretext). Plaintiff's ADEA age discrimination claim fails as a matter of law.

## B.    AEPA & Public Policy

Plaintiff contends that Motorola violated AEPA, A.R.S. § 23-1501, and the public policy of the State of Arizona by failing to disclose and/or by concealing "that Defendant's employee had committed forgery on a contract with the Illinois State Police," and by firing her for engaging in protected whistleblowing activities, i.e., reporting her concerns about the forgery and Motorola's "failure to remedy and conceal the illegal act." (Dkt. #94, pp. 2, 9-13).

"The AEPA spells out the public policy of this state and enumerates the four circumstances under which an employee may bring a wrongful termination action in Arizona." Galati v. America West Airlines, Inc., 205 Ariz. 290, 292 (Ariz. App. 2003) (citing A.R.S. § 23-1501). The AEPA provides, in pertinent part, that an employee has an actionable claim when:

> (c) The employer has terminated the employment relationship of an employee in retaliation for any of the following: . . . (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an agency of a public body or political subdivision.

A.R.S. § 23-1501(c); Galati, 205 Ariz. at 292 (employee may bring wrongful termination action "when an employer terminates an employee in retaliation for refusing to violate Arizona law or for reporting violations of Arizona law to the employer's management or

other investigative authority").  As such, Plaintiff must establish three elements: (1) that she had a good faith, reasonable belief that Motorola violated or was violating state law; (2) that she disclosed her belief in a reasonable manner to someone that she believed had the authority to investigate the alleged violation and take action to prevent further violations; (3) that her disclosure was a substantial motivating factor in Motorola's decision to terminate her employment.  See Murcott v. Best Western Int'l, Inc., 198 Ariz. 349, 356-360 (2000).

With respect to the second element, to the extent that Plaintiff contends that the forgery of her signature on the BOA constitutes the illegal act, although Plaintiff may have initially discovered the forgery, she was not the one who disclosed it to her supervisors; that was Deborah Neil. Ms. Neil originally contacted Plaintiff about the BOA; Plaintiff reviewed the contract and told Ms. Neil that her signature had been forged; *Ms. Neil* then reported the forgery to her supervisor, Mr. Earl Richardson, who in turn reported the forgery to Ms. Vande Hey, Plaintiff's supervisor.  Thus, the forgery itself cannot constitute the illegal act that Plaintiff disclosed under AEPA.  Nonetheless, Plaintiff alternatively contends that the alleged illegal act that she reported was Ms. Vande Hey and Mr. Steverson's failure to inform the ICJIA of the forgery and need to re-execute the BOA.

The AEPA requires that Plaintiff have a good faith, reasonable belief that Motorola violated or was violating state law.  Plaintiff contends that by failing to "correct" the forgery of her signature on the BOA (she also refers to Motorola's conduct as "concealment") after "her reporting of the forgery and persistent requests that the forgery be corrected with the Illinois State Police," Motorola violated (1) A.R.S. § 13-2002A, which provides, in pertinent part, that "[a] person commits forgery if, with intent to defraud, the person: . . . [k]nowingly possesses a forged instrument . . ."; (2) A.R.S. § 13-2301, *et seq.*, Arizona's racketeering statute, and (3) A.R.S. § 13-2311, which "deal[s] with fraudulent schemes, practice, and concealment of the forgery as described in A.R.S. [§] 13-2301(D)(4)(b)(iv)."  (Dkt. #94, p.10).  However, Plaintiff points to nothing in the record to establish that at any time prior to her termination she actually believed that Motorola was violating state law in its handling of the forgery incident.  First, in her February 12, 2006 email, Plaintiff stated that she thought

the OEC "did an outstanding job in the investigation of the forgery." Second, although Plaintiff stated in her deposition that she "thought it was a wrong – it was unethical or *illegal* to have a contract – that the contract was unenforceable and that was an ethical concern," nothing in the record supports Plaintiff's contention that she believed prior to her termination that her supervisor's failure to inform the ICJIA of the forgery and re-execute the BOA in what Plaintiff considered a timely fashion was illegal, rather than simply "an ethical matter." (DSOF ¶ 83).

Prior to February 2001, while Plaintiff made multiple inquiries into her supervisor's progress in re-executing the BOA, there is no indication that she believed her supervisors' actions were illegal.[5] In fact, Plaintiff offered her services to assist in "rescinding the contract and signing an identical, new agreement with the appropriate signature." (PSOF ¶ 110, Exh. 26). It was not until February 1, 2006, that Plaintiff gave any indication that she thought her supervisors' handling of the matter was objectionable; but even then Plaintiff merely wrote then that she "fe[lt] that [her] trust has been violated in the way the Law Department has handled this matter." (PSOF ¶ 117, Exh. 28). Then, on February 9, 2009, Plaintiff wrote that "Motorola has failed in its responsibility to its customer to inform them that the signature on the BOA was forged," and that she "consider[ed] [her] reputation to be defamed as long as Motorola continue[d] to represent to the Illinois State Police by its inaction that the signature on the BOA is valid." (PSOF ¶ 118, Exhs. 29, 30). But those statements, along with Plaintiff's comment in her February 9, 2009 letter that "[f]orgery is a crime," one which Motorola investigated and fired the person responsible, do not establish that Plaintiff believed that her supervisors failure to expeditiously inform ICJIA of the forgery and re-execute the BOA was illegal.

---

[5]Although Plaintiff's husband sent a letter to the CEO of Motorola in January 2006 expressing his displeasure with Plaintiff's supervisor's handling of the forgery incident, Plaintiff stated that she was not aware of the letter, and made no similar statements at that time. (Dkt. #94, p.8).

Moreover, Plaintiff was aware that the terms of the original BOA were more favorable to the ICJIA than Motorola normally agreed-to in its standard contracts. (DSOF ¶ 21, Exh. 1, Grey Depo. at 106:4-18). And Plaintiff acknowledged in her deposition that there was no indication that Motorola did not intend to honor the contract. (DSOF ¶ 84). It is thus quite difficult for the Court to accept Plaintiff's contention that she had a good faith belief that Motorola was violating a law such as A.R.S. § 13-2002A by simply failing to expeditiously disclose the discovered forgery to the ICJIA or to re-issue the BOA when the forgery and BOA resulted in more favorable terms to the ICJIA and Motorola continued to honor the contract; such circumstances do not support a reasonable belief that Motorola intended to defraud the ICJIA by retaining the BOA. In addition, although Plaintiff cites generally to Arizona's racketeering statute, Plaintiff does not state how she believed Motorola was violating the statute. Further, Plaintiff's citation to A.R.S. § 13-2311 is inapposite as it merely prohibits the use of fraudulent practices in matters related to the business conducted by agencies and entities of the State of Arizona.

In sum, the record indicates that Plaintiff's concerns with respect to her supervisors' failure to expeditiously inform the ICJIA of the forgery and to re-execute the BOA were simply "ethical" concerns related to her belief that such action was necessary to protect her reputation. (PSOF ¶¶ 101, 104, 107, 108, 110, 117, 118, 120; DSOF ¶ 83). There is no indication whatsoever that Plaintiff's statements to her supervisors and superiors were made to inform them of any potential violation of state law. Accordingly, after drawing all inferences in favor of Plaintiff, the Court cannot conclude that a reasonable juror could find that Plaintiff possessed a good faith, reasonable belief that Motorola was violating the law or that her statements were made for the purpose of reporting an illegality. See, e.g., Dahlberg v. Lutheran Social Services of North Dakota, 625 N.W.2d 241, 256 (N.D. 2001) (concluding based on the record that "reasonable minds could only conclude that [Plaintiff's] statements . . . were made for the purpose of questioning disparate discipline of staff for incidents of inadequate supervision and not for the purpose of reporting an illegality"); Dzwonar v. McDevitt, 177 N.J. 451, 467-68, 903 (N.J. 2003) ("[Plaintiff's] complaints

concern the administration of meetings generally . . . . [T]he crux of plaintiff's argument is that defendants should have explained their actions more fully to the general memberships. Because plaintiff's dispute concerns the adequacy of the Union's internal procedures, we conclude as a matter of law that plaintiff did not possess an objectively reasonable belief that [defendants' actions violated the law].").  Plaintiff's AEPA and public policy claims for wrongful termination fail as a matter of law.[6]

//

---

[6]The Court need not resolve the "open and much debated question in Arizona law" on "[w]hether a common law tort for wrongful termination still exists after the AEPA[.]" Galati, 205 Ariz. at 294.  To the extent a common law tort for wrongful termination remains after the AEPA, it would be based on "whistleblowing activity which serves a public purpose" rather than employees' actions based on "merely private or proprietary" concerns. Wagner v. City of Globe, 150 Ariz. 82, 89 (1986).  As stated above, the record here establishes that Plaintiff's concerns with respect to her supervisors' failure to expeditiously inform the ICJIA or to re-execute the BOA were based on personal concerns, i.e., any damage that might occur to her reputation.  Plaintiff's persistent inquiry into whether the BOA had been re-executed with a proper signature was not based on concern that her supervisors' actions (or failure to expeditiously act) "contravened the important public policy interests embodied in the law." Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 1035 (1985).

## C.    Retaliation

Plaintiff contends that Motorola's "failure to consider and rehire [her] following her complaints of discriminatory treatment was in violation of the anti-retaliation provisions of the ADEA." (FAC ¶ 47). Defendant argues in its motion for summary judgment that Plaintiff's retaliation claim fails because "Plaintiff's conduct does not constitute protected activity and she cannot establish a causal link between any protected activity and Motorola's hiring decisions." (Dkt. #79, p.19). The Court notes that Plaintiff, as with her Title VII claim, fails to respond to Defendant's request for summary judgment.[7]

"In order to establish a prima facie case of retaliation, [a plaintiff] must demonstrate that (1) [she] had engaged in a protected activity; (2) [she] was thereafter subjected by her employer to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." Porter v. California Dept. of Corrections, 419 F.3d 885, 894 (9th Cir. 2005) (citing Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000)); Seranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) ("[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision."). Proximity of time between a protected activity and an adverse action may support an inference of causation. Ray, 217 F.3d at 1244; Villarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) ("[I]n order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression.") (internal quotation marks and citation omitted). However, "it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Porter, 383 F.3d 1018, 1030 (9th Cir. 2004).

---

[7]Although Plaintiff cites the Court to some case law regarding retaliation and causation, see Dkt. #94, pp. 11-12, Plaintiff only discusses those cases in the context of her AEPA claim, her termination, and her complaints about her supervisor's handling of the forgery incident.

If the plaintiff provides sufficient evidence to show a prima facie case of retaliation, then the burden shifts to the defendant to articulate some legitimate, non-retaliatory reason for its actions. Porter, 419 F.3d at 894; Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982) (same). And if the defendant sets forth such a reason, then the plaintiff bears the burden of submitting evidence to establish that the defendant's proffered reason is merely a pretext for an underlying retaliatory motive. Porter, 419 F.3d at 894.

Here, Plaintiff claims that Motorola retaliated against her by failing to rehire her. (FAC ¶ 47). It is unclear, however, what the protected activity is that Plaintiff contends she engaged in. In her deposition, Plaintiff testified that the primary reason she believes she was not rehired by Motorola was because of her involvement in the forgery investigation. (DSOF ¶ 128, Gray Depo. 29:12-30:19, 159:2-12). Plaintiff's retaliation claim, however, is brought under the ADEA; thus, Plaintiff's claim is retaliation based on age discrimination. Plaintiff provides no indication or argument with respect to what the protected activity was that she engaged in prior to Motorola's decision not to rehire her in the positions for which she applied.

The Court will presume that Plaintiff's alleged protected activity was either her May 10, 2006 letter to Motorola's Executive Vice President of Human Resources, her July 13, 2006 letter to Motorola's General Counsel, or the filing of her August 7, 2006 Charge of Discrimination with the EEOC. (DSOF ¶ 130; PSOF ¶¶ 160, 188). Plaintiff's May 10, 2006 letter, however, did not complain of or oppose any alleged age discrimination. (DSOF ¶¶ 131-33). Thus, Plaintiff's May 10, 2006 letter could not have reasonably put Motorola on notice that Plaintiff was opposing age discrimination, and as such did not constitute a protected activity. See Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 291-92 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [the ADEA].");  accord Lee v. Connecticut, 427 F. Supp. 2d 124, 134-35 (D. Conn. 2006).

Plaintiff's July 13, 2006 letter and EEOC Charge, on the other hand, outlines Plaintiff's claims against Motorola, including her age discrimination claim, and thus could constitute protected activity sufficient to place Motorola on notice that Plaintiff was opposing conduct allegedly in violation of the ADEA. The Court notes, however, that nothing in Plaintiff's July 13, 2006 letter indicates that Plaintiff believed that Motorola was engaging in age-based discrimination by failing to re-hire her; the letter spoke primarily of Plaintiff's termination. But see Lee, 427 F. Supp. 2d at 133 ("[T]he plaintiff must demonstrate a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'") (quoting Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)). In addition, although temporal proximity between a protected activity and an adverse employment action can sometimes constitute sufficient circumstantial evidence of retaliation, Bell v. Clackamas County, 341 F.3d 858, 864 (9th Cir. 2003), Plaintiff fails to demonstrate a casual link between her July 13, 2006 letter or EEOC charge and any of the relevant decision-makers' decisions not to rehire her for the various positions for which she applied between March 31, 2006 and July 7, 2006. Plaintiff produces no evidence (or argument) that any of the relevant decision-makers, i.e. the recruiters or hiring managers, had any knowledge of Plaintiff's July 13, 2006 letter or EEOC charge, or any other complaint of age discrimination. See Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); Gunther v. Washington County, 623 F.2d 1303, 1316 (9th Cir. 1979).

In any event, as discussed above, Motorola offers legitimate, non-retaliatory reasons for its decisions to interview or hire Plaintiff in the positions for which she applied – she was less qualified for the particular positions to which she applied than the individuals ultimately hired. (Dkt. #79, pp. 15-17; DSOF ¶¶ 61-67, 69, 71-77, 79-80, 113, 122, 125). Furthermore, as discussed above, Plaintiff fails to submit evidence to establish that Motorola's proffered reason is merely a pretext for an underlying retaliatory motive; Plaintiff fails to produce evidence "showing that [Defendant's] explanation is unworthy of belief or through evidence

showing that [retaliation] more likely motivated its decision." Pottenger v. Potlach Corp., 329 F.3d 740, 746 (9th Cir. 2003). Plaintiff provides no evidence, direct or circumstantial, other than temporal proximity (although even then there is no evidence that any of the relevant decision-makers knew of Plaintiff's protected activity or complaints of age discrimination), to indicate that Motorola decided not to rehire her because she engaged in a protected activity, and that but for engaging in such an activity she would have been hired. See Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir. 1986). Thus, Plaintiff's ADEA retaliation claim must fail.[8]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment is DENIED. (Dkt. #75).

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is GRANTED. (Dkt. #79).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 30th day of September, 2009.

_____
Mary H. Murguia
United States District Judge

---

[8]Because Plaintiff's claims do not survive summary judgment, the Court need not address the issue of whether Plaintiff has presented sufficient evidence to pursue her claim for punitive and/or liquidated damages. (Dkt. #79, pp. 20-21; Dkt. #94, pp. 19-20; Dkt. #96, p.11).